# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMES STEWART | ) | |
| | ) | |
| Plaintiff | ) | No. 18 C 3916 |
| | ) | |
| v. | ) | District Judge John F. Kness |
| | ) | |
| CREDIT CONTROL LLC, *et al.* | ) | Magistrate Judge Jeffrey Cummings |
| | ) | |
| Defendants | ) | |

## REPORT AND RECOMMENDATION

Plaintiff James Stewart ("Stewart") filed this action against defendants Credit Control LLC ("Credit Control"), Resurgent Capital Services ("Resurgent"), Experian Information Solutions ("Experian"), Inc., and LVNV Funding LLC ("LVNV"), (collectively "defendants"), pursuant to the Fair Credit Reporting Act, 15 U.S.C. Sec. 1681 *et seq.*, and the Fair Debt Collections Practices Act, 15 U.S.C. Sec. 1692 *et seq.* District Judge Charles Norgle referred the case to Magistrate Judge Michael Mason on January 31, 2019 for all pre-trial matters and for settlement purposes. (Dckt. #66). The referral was subsequently reassigned to this Court upon Judge Mason's retirement. (Dckt. #67). On February 28, 2020, the case was reassigned from Judge Norgle to District Judge John Kness. (Dckt. #172).

On February 29, 2020, defendants filed a motion for sanctions after plaintiff failed to appear for his deposition as ordered by the Court. (Dckt. #162). Defendants ask that plaintiff's case be dismissed with prejudice[1] and that he be ordered to pay the costs associated with this motion, a prior motion for sanctions, and the court reporter hired for an earlier deposition. For the

---

[1] The Court notes that Judge Kness granted Credit Control's motion to dismiss Stewart's complaint on May 8, 2020. (Dckt. #196). Stewart was granted leave to amend his complaint on or before June 5, 2020 and he timely filed an amended complaint. (Dckt. #198).

1

reasons stated below, the Court issues its Report and Recommendation to the District Court recommending that defendants' motion be granted in part and that this case be dismissed with prejudice.

I. **BACKGROUND**

LVNV purchases debt accounts from commercial debt holders that have "charged off" a customer's account after the non-payment of a debt. At some point not reflected in the record, LVNV bought a charged-off account that Stewart had previously taken out with Credit One Bank. (Dckt. #128 at 10). LVNV outsources the management of its debt portfolios to defendant Resurgent, https://www.lvnvfunding.com (last visited May 21, 2020), and did so with Stewart's account. It was also assigned for collection purposes to the debt collection company Credit Control. (Dckt. #128 at 10).

Under the Fair Credit Reporting Act, "[a] debt collector permissibly obtains a consumer's credit report if the debt collector has reason to believe that the consumer owes the debt." *Buckley v. Afni, Inc.*, 133 F.Supp.3d 1140, 1146 (S.D.Ind. 2016) (internal quotes and citation omitted). Nonetheless, Stewart alleges in his First Amended Complaint that Credit Control improperly requested a credit report from the consumer reporting agency Experian on January 25, 2017, and that Resurgent improperly sought one shortly thereafter on February 18, 2017. Stewart further alleges that both requests were illegal because they lacked a proper purpose as required by the Fair Credit Reporting Act. (Dckt. #40 at ¶¶47-54).

Multiple discovery disputes have arisen in this case, but chief among them has been Stewart's continuing claim that LVNV has not proven that it purchased his credit account. This issue was first raised during an April 25, 2019 hearing at which counsel for LVNV informed the Court that Stewart had refused to respond to various discovery requests such as where he had

lived in the past 10 years and whether the signature on the original credit application was actually his own. Counsel also stated that Stewart had been claiming that he did not have an account with LVNV. Defendant's counsel explained that he had responded to Stewart's discovery requests on this issue by producing a copy of Stewart's account application and "the document showing that this particular account was sold [to LVNV] as part of a portfolio from the original creditor and the credit card company." (Dckt. #128 at 15, 19). Stewart rejected the sufficiency of these documents, however, and claimed that LVNV was refusing to "validate" his account. (*Id*. at 21, "They refused to validate the debt. Now they want me to validate the debt for them."). After careful questioning on these issues, the Court found that defendants had satisfied their discovery obligation by producing everything that was relevant to LVNV's purchase and transfer of Stewart's credit account. (*Id*. at 15-18).

That did not resolve the issue for Stewart, however, and he filed three new motions to compel on June 11, 2019 demanding that defendants produce "the balance of discovery." (Dckt. ##90, 91, 92). The motion directed to LVNV claimed that it had failed to respond to Document Request No. 9, which sought an unredacted copy of the Forward Flow Agreement that Stewart claimed – and continues to argue – is central to showing that LVNV is the owner of his account. (Dckt. #92 at 2). Stewart also demanded a copy of the bill of sale that accompanied LVNV's purchase. (*Id*. at 3). The Court denied Stewart's motion on June 26, 2019 by noting that it had already decided this issue and would not reconsider its prior ruling. (Dckt. #103).

Undeterred by this finding, Stewart promptly filed a motion for reconsideration that led to another hearing on July 11, 2019. LVNV's counsel explained in greater detail what it had turned over to Stewart concerning the purchase of his account and made a distinction between the "bill of sale" and the "receivable file" as follows:

3

> Your Honor, we produced the bill of sale that is for the signed bill that is for the particular group of document[s] – group of accounts, the portfolio that was acquired. That is the document transferring the ownership of the particular account that Mr. Stewart has from the original creditor – to LVNV.
>
> We also produced the portion of the receivable file which is a – it's a huge data file that has millions of accounts in it. We've produced the particular part of that data file that has Mr. Stewart's account listed in it, so that information has been produced. So he has essentially the document transferring the ownership and then the attachment that follows with it identifying his account as one of the ones being transferred.

(Dckt. #129 at 20). Counsel further clarified that no separate or unique bill of sale exists for Stewart's individual account. Rather, LVNV and the original creditor entered into a larger agreement "to make subsequent purchases, and the purchases are made through the bill of sale" that referenced a "large electronic portfolio" of "millions" of accounts. That included the purchase of Stewart's individual account. (*Id*. at 20, 25, 30). LVNV gave Stewart a copy of this bill of sale together with "the portion of that electronic file that goes with the bill of sale" that was related to the purchase of his individual account. Based on this explanation, the Court reiterated is rejection of Stewart's claim that LVNV's production was inadequate and found that it had met all of its discovery objections. (*Id*. at 24, 28).

With this issue seemingly resolved, the Court determined at a hearing on July 30, 2019 that the time had come for Stewart to be deposed and ordered him to appear for deposition no later than August 30, 2019. (Dckt. # 127). Defendants noticed the deposition for August 27, but Stewart – who has been proceeding *pro se* – declined to appear after he told defense counsel that he was looking for an attorney to represent him. The Court held a hearing on September 24, 2019 and gave Stewart until the next status date of October 31 to find an attorney. (Dckt. #138). The Court warned, however, that a deposition date would be set at the next hearing even if his search was unsuccessful. (Dckt. #177 at 4). The Court's language was clear: "So we're going

4

to schedule that date on the 31st. We're going to schedule your deposition, and if it doesn't take place for some reason there are going to be some consequences." (*Id*. at 6).

Stewart had not retained counsel by the next hearing (rescheduled for October 29), and the Court followed through on its promise by ordering Stewart to be deposed on December 3, 2019. (Dckt. #141). Defendants noticed the deposition for that date and arranged for a court reporter to be present. Stewart, however, decided to disregard the Court's order. LVNV's counsel emailed Stewart on December 2, 2019 at 1:34 p.m. reminding him of his deposition and asking him to confirm that he planned to appear. (Dckt. #143 at Ex. A). At 5:18 p.m., Stewart responded by stating "Dear Parties, I will not attend the deposition scheduled [for] 12/3/2019 pursuant to Fed. R. of Civ[.] Pro[.] Rule 28(c)." (*Id*. at Ex. B). Stewart attached the following "Notice of Canceling Deposition" to his email:

> (c) DISQUALIFICATION. A deposition must not be taken before a person who is any party's relative, employee, or attorney; who is related to or employed by any party's attorney; or who is financially interested in the action.
>
> In the case at bar Plaintiff STEWART, JAMES is related to Stewart, James.
>
> Stewart, James is the advocate for STEWART, JAMES.
>
> Stewart, James has a financial interest in the STEWART, JAMES action.
> For all the above reasons, Stewart, James must decline being deposed.

(*Id*. at Ex. C).

Defendants quickly filed a motion for sanctions asking the Court to dismiss Stewart's Amended Complaint for disobeying the Court's order. (Dckt. #143). In defense, Stewart cited Rule 28(c) but also claimed that he could not be deposed without first receiving the Forward Flow Agreement from LVNV that would show "proof of ownership of the alleged[d] account."

5

(Dckt. #157 at 3). Stewart alleged that his due process rights would be violated if he were to sit for a deposition without this document.

The Court held a hearing on LVNV's motion on January 28, 2020. The Court instructed Stewart that Rule 28(c) only concerns the person – such as a court reporter – who gives an oath to a deponent and "has absolutely nothing to do" the person (like him) who was to be deposed. (Dckt. #178 at 6). The Court reiterated to Stewart that he had been *ordered* to appear for his deposition on December 3 and that his private concern about the Forward Flow Agreement – which LVNV's counsel again explained was unwarranted because LVNV had produced all documentation regarding its ownership of Stewart's account (*id.* at 7-8) – "doesn't make any difference" when weighed against that order. (*Id.* at 6). The Court also rejected Stewart's argument that his due process rights were at issue because "there is no right in the Rules of Civil Procedure to sequence things with the depositions so that you're not going to show up until you get something from them" – especially "if you have a court order to appear for a deposition." (*Id*. at 7). Finally, the Court advised Stewart that "every reason that [he had] given for not appearing for [his] deposition has been addressed" and found *not* to be "a sufficient cause to defy a court order and [not] appear for [his] deposition." (*Id.* at 11-12).

Nevertheless, the Court denied defendants' sanctions motion without prejudice in order to give Stewart what the Court described in plain terms as his "last chance" to appear for his deposition within the next 21 days. (Dckt. #178 at 13-14). The Court made the consequences of another refusal clear to Stewart:

> If you don't comply with my order of appearing for your deposition within the next 21 days, there will be severe consequences up to and including the dismissal of your case, and I want to make that warning very clear for you on the record so that on the 22nd day if they refile their motion and you haven't appeared and I enter an order dismissing your case, you won't say: I didn't know this could happen.

6

> I'm telling you here today it can happen. I'm telling you here that the Court of Appeals sitting up on the 27th Floor has . . . . [f]or less than what you've done here in this case, they've upheld dismissals. So this is really your last chance and you need to think about it, but you're going to have to show up.

(*Id*. at 12). The Court also made clear than in addition to dismissal, Stewart could be required to pay the fees and costs associated with his failure to appear for his deposition such as court reporter fees. (*Id*. at 16).

The Court issued a written order on January 29, 2020 to underscore Stewart's obligation to comply with the Court's oral ruling. (Dckt. #159). The Court reminded Stewart that it had already determined that LVNV had produced all of the documents it was required to turn over and – more importantly – that he had been ordered by the Court to appear for the deposition on December 3, 2019. (*Id.* at 2, "the Court ordered him to appear, and plaintiff was bound by that directive regardless of whether defendants had produced the document in question"). The Court reminded Stewart that he had been warned of the consequences of defying the Court's order and that this was his "last opportunity to comply with his discovery requirements." The Court then stated in bold print:

> **Plaintiff is therefore strictly ordered to appear for his deposition on or before February 18, 2020 at a date and time mutually agreed to by the parties and to answer the questions posed to him by defendants. Any refusal to respond to defense counsel's questions – or to fail to appear for the deposition within the specific time period – will permit defendants to renew their motion for sanctions and will result in serious consequences up to and including the dismissal of this case and an order requiring plaintiff to pay the attorney's fees and expenses that defendants have incurred as a consequence of their efforts to take plaintiff's deposition**.

(*Id*. at p. 3).

Despite these foreboding and unambiguous warnings, Stewart again chose to defy the Court's order by refusing to appear for his deposition. In particular, defendants sent an email to

7

him on January 29, 2020 proposing three dates for the deposition: February 11, 13, and 18. (Dckt. #162 at Ex. A). Stewart spoke with LVNV's counsel on February 3 and stated that he had not yet decided whether he would appear for a deposition at all. Counsel emailed Stewart the next day asking for advance notice of the date so that he could make the necessary arrangements for it, and Stewart responded "OK . . . will do." (*Id*.). Instead of doing so, however, Stewart wrote counsel on February 14 stating that he planned to file a motion to stay discovery by February 17, 2020, (*id*. at Ex. B),[2] and never agreed to appear for his deposition.

Accordingly, defendants brought this motion for sanctions on February 19, 2020 seeking to dismiss Stewart's case. Defendants seek sanctions under Rule 37(b)(2)(A)(v), Rule 37(d)(1)(A), and Rule 41(b). For the reasons stated below, the Court recommends that defendants' motion for sanctions be granted pursuant to Rule 37(b)(2)(A)(v) and that the case against all defendants be dismissed with prejudice.[3]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 37(b)(2)(A)(v) provides that "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders" by "dismissing the action or proceeding in whole or in part." Fed.R.Civ.P. 37(b)(2)(A)(v); *see also Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 775 (7th Cir. 2016). That includes dismissal for a party's failure to appear at – or even its inadequate participation in – a court-ordered deposition. *See Lindsey v. St. Paul*

---

[2] Stewart subsequently filed a flurry of motions. These included a motion to take judicial notice that LVNV did not produce the Forward Flow Agreement; a motion to stay discovery until defendant did so; and a motion for sanctions against LVNV on the Agreement issue. (Dckt. ##167, 168, 182). This Court denied all three motions on June 4, 2020. (Dckt. #195).

[3] Because the Court finds that sanctions are warranted under Rule 37(b)(2)(A)(v), it need not address defendants' arguments under Rule 37(d)(1)(A) and Rule 41(b).

*Fire & Home Ins. Co.*, 202 Fed.Appx. 137, 140 (7th Cir. 2006); *Vance v. Hill*, No. 3:17-CV-3312, 2019 WL 1083770, at *4 (C.D.Ill. Mar. 7, 2019). Indeed, the Seventh Circuit has recognized that "the failure to appear for a deposition is treated as a more significant violation than other discovery abuses." *Alston v. Deutsch Borse, AG,* 80 Fed.Appx. 517, 519 (7th Cir. 2003).

Sanctions are warranted under Rule 37(b)(2) "when a party fails to comply with discovery orders, and the district court finds willfulness, bad faith, or fault." *De Falco v. Oak Lawn Pub. Library,* 25 Fed.Appx. 455, 457 (7th Cir. 2001); *Williams v. Wahner,* 714 Fed.Appx. 601, 604 (7th Cir. 2018) (same). Willfulness and bad faith under Rule 37(b)(2)(A)(v) "are associated with conduct that is intentional and reckless[.]" *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000). By contrast, "'[f]ault in this context does not require a showing of intent, but involves 'extraordinarily poor judgment' or 'gross negligence' rather than mere 'mistake or carelessness.'" *Williams,* 714 Fed.Appx. at 604, *quoting Ramirez v. T&H Lemont, Inc.,* 845 F.3d 772, 776 (7th Cir. 2016); *Bolanowski v. GMRI, Inc*., 178 Fed.Appx. 579, 581 (7th Cir. 2011) (fault "has been interpreted to mean that a party has acted unreasonably"); *see also Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) ("Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault.") (citation omitted).

### III. DISCUSSION

It is undisputed that Stewart has disregarded three orders issued by this Court to appear for his deposition. He first refused to comply with the Court's directive to sit for a deposition in August 2019 on the ground that he needed to find an attorney to represent him. Stewart next declined to appear for deposition on December 3, 2019 as the Court had ordered. That time,

however, the Court rejected his explanations as discussed above, *supra* at Section I, and explained that good cause existed for granting defendants' motion for sanctions but gave Stewart one last opportunity to be deposed within 21 days of the Court's order.

Unphased by this warning, Stewart has once more refused to appear for his deposition and he presents a number of reasons – most of which have already been rejected by this Court – to justify his behavior. Stewart claims, for example, that he did not have to appear for a deposition because LVNV answered "denied" to all of his Rule 36 Requests to Admit. (Dckt. #173 at 5). He has not presented any evidence on this issue, but Rule 36 authorizes a responding party to deny a request without further elaboration when that constitutes an appropriate response. *See* Fed.R.Civ.P. 36(a)(4). A party is not permitted to contest such a response, moreover, much less use it as a reason to ignore an order to appear for deposition. *See Foretich v. Chung*, 151 F.R.D. 3, 5 (D.D.C. 1993) (stating that "there is simply no provision of the Federal Rules allowing a party to litigate a denied request for an admission"); *see also United States v. Operation Rescue Nat.*, 111 F.Supp.2d 948, 968 (S.D.Ohio 1999).[4]

Stewart also claims that he had the right to disregard the Court's order "due to this court allowing Defense counsel LVNV to interject ex parte communications with the court." (Dckt. #173 at 6). Stewart does not elaborate on this statement but is presumably referring to an earlier dispute in this case in which he claimed that the Court prejudiced him by receiving *ex parte* submissions from defendants. During a discovery conference on March 7, 2019, the Court asked defendants' counsel "to provide the Court with their responses to requests to produce,

---

[4] After filing his response to defendants' motion, Stewart filed a motion "regarding the sufficiency of admission." (Dckt. #189). He challenged 17 of LVNV's responses based on the same claim here – that they merely stated "denied." The Court denied his motion on April 10, 2020 by explaining that Rule 36(a)(4) allowed LVNV to do so. (Dckt. #190). Stewart also claimed that LVNV's denials were factually untrue, but the Court pointed out that Rule 36(a)(4) only permits a party to dispute the "sufficiency" of a response and not its factual accuracy. (*Id*.).

interrogatories, and requests to admit, along with a cover letter outlining what they have produced and what disputes remain between plaintiff and defendants." (Dckt. #82). Although defendants sent copies of these submissions to the Court *and* Stewart – and later delivered an additional copy to him in open court on July 11, 2019 – Stewart claimed that he did not receive them and filed a motion for the Court to recuse itself. (Dckt. #117). The Court denied Stewart's recusal motion on August 7, 2019 and explained that he had received everything that defendants sent to this Court. (Dckt. #131). As the Court explained, no *ex parte* communications took place between it and defendants, and Stewart has no ground for reviving this claim as a reason for disregarding the Court's deposition order.

Stewart next alleges that he did not receive certain policy and procedure documents from LVNV related to his FCRA allegation. (Dckt. #173 at 5). Stewart, however, does not acknowledge that the Court has already issued a ruling to resolve this issue. Specifically, at the July 11, 2019 hearing, the Court considered Stewart's renewed arguments concerning his Document Request No. 6, which he described as seeking "all policy manuals, procedural manuals, or other documents which address [LVNV's] policies, practices or procedures when collecting past-due accounts." (Dckt. #129 at 17). LVNV told the Court it had already produced everything in its possession that was responsive to Request No. 6. As a precaution, the Court requested LVNV to revisit this issue and to turn over any additional documents that it might have within 21 days. (Dckt. #116; Dckt. #129 at 19). Stewart has not presented any evidence that LVNV failed to comply with this order. In fact, his response does not even mention what took place in open court on July 11, 2019.

Stewart's primary justification for refusing to be deposed is – as it has been throughout this case – that he did not receive the Forward Flow Agreement ("Agreement") that he claims is

11

necessary for showing that LVNV purchased his credit account.[5] Stewart claims that without the production of this Agreement, his due process rights would be violated if he were forced by the Court's order to appear for his deposition and counsel for LVNV and Resurgent would have "no standing to depose" him. (Dckt. #173 at 2). These arguments are flawed for several reasons.

First, Stewart fails to acknowledge that this Court on January 28, 2020 already considered and rejected his argument that LVNV's failure to produce the Agreement provides justification for his failure to appear at his deposition. (Dckt. #178 at 6-7, 9-10). The Court reiterated in its January 29 order that Stewart was required to appear for deposition "regardless of whether defendants had produced the document in question." (Dckt. #159 at 2).

Second, the Court has likewise expressly rejected Stewart's due process argument after Stewart tried to rely on this argument as a reason for not appearing for his deposition on December 3, 2019. Specifically, the Court held on January 28, 2020 that it would not be a violation of due process for the defendants to depose him despite the fact that the Agreement had not been produced. (Dckt. #178 at 18). The Court took care to explain to Stewart that his discovery rights and obligations were governed by the Rules of Civil Procedure and that he was

---

[5] Although the issue is not determinative for the purpose of this Report and Recommendation, the Court notes that none of the parties have clearly defined what a forward flow agreement is. It appears that sales of credit accounts are sometimes documented by a bill of sale and a corresponding – but separate – forward flow agreement in which large numbers of accounts are identified. *See, e.g., Stratton v. Portfolio Recovery Assocs., LLC*, 706 Fed.Appx. 840, 845-46 (6th Cir. 2017); *Velazquez v. Midland Funding, LLC*, No. 1:18-CV-00043, 2018 WL 6492602, at *7-8 (D.Idaho Dec. 10, 2018). Neither these cases nor any others cited by the parties or uncovered by the Court indicate that the bills of sale that document the sale of credit accounts are *always* accompanied by forward flow agreements or that a bill of sale is ineffectual without such an agreement. Consequently, the fact that LVNV –which denies the existence of a forward flow agreement in connection with the purchase of Stewart's account – has not produced such an agreement does not mean that LVNV is wrongfully withholding the agreement as Stewart implies.

!

"getting more due process than [defendants] would argue you deserve right now by getting another chance" to be deposed and avoid sanctions. (*Id*. at 7, 18).

Third, Stewart's argument that defense counsel would lack "standing" to depose him without production of the Agreement is based on his mistaken reliance on a factually distinct, unpublished state court decision. In that case, the court imposed sanctions on plaintiff's counsel for filing a frivolous debt collection lawsuit because counsel failed to "obtain the requisite documentary or other verifiable proof of the claim alleged, including the entire chain of assignment(s), prior to commencing the . . . action against defendant." *LVNV Funding LLC v. Guest,* 953 N.Y.S.2d 550, 2012 WL 1957715, at *6 (2012). The court further held that plaintiff lacked standing to sue the defendant to collect on the debt without proof of the chain of assignment of plaintiff's debt. *Id.,* at *5. In this case, the "standing" issue is not a concern because Stewart sued the defendants and defendants – as this Court advised Stewart on January 28 – are entitled to take his deposition. (Dckt. #178 at 10-11).

Fourth, even if the Forward Flow Agreement issue remained open, Stewart did not have the discretion to decide if he would obey the Court's directive to appear for his deposition: a court's order is *binding* and "absent a stay, [a party] must comply promptly with the order" once it is issued. *Maness v. Meyers*, 419 U.S. 449, 458 (1975); *see also James v. McDonald's Corp.,* 417 F.3d 672, 681 (7th Cir. 2005) ("Once a party invokes the judicial system by filing a lawsuit, it must abide by the rules of the court[.]") (internal quotes and citation omitted). The fact that a party disagrees with a ruling's merits – as Stewart plainly does regarding the Agreement – does not alter that duty even if the ruling is based on faulty reasoning. "Parties must obey court orders regardless of their validity," *Alexander v. Chicago Park Dist.*, 927 F.2d 1014, 1025 (7th Cir.

13

1991), and Stewart had no choice but to be deposed within 21 days of the Court's January 29 order as he was directed to do.

Finally, Stewart's attempt to justify his non-appearance by stating that he planned to file a motion to stay discovery fails as a matter of law. Stewart does not have the unilateral right to determine for himself the order in which discovery should be conducted in this case. The Court – not Stewart – has the authority to decide when his deposition should take place because "Rule 26 vests the trial judge with broad discretion to . . . dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); Fed.R.Civ.P. 26(d)(3)(A) (stating that the "methods of discovery may be used *in any sequence*" absent a court order or a stipulation) (emphasis added). Stewart may believe that he can replace the Court's judgment with his own, but "litigants who decide to play by rules of their own invention will find that the game cannot be won." *United States v. Golden Elevator, Inc.,* 27 F.3d 301, 302 (7th Cir.1994).

The Court therefore concludes that Stewart's disregard of its January 28 and 29, 2020 orders warrants the imposition of sanctions under Rule 37(b)(2)(A)(v) because his conduct demonstrates willfulness, bad faith, and fault. Stewart's decision not to appear for his last ordered deposition was clearly intentional as he concedes in his brief that he consciously chose to disregard the Court's order. (Dckt. #173 at 2, "Plaintiff d[id] not take making the decision not [to] show up for the deposition lightly"). Furthermore, Stewart's continued reliance on his argument concerning the Forward Flow Agreement is strong evidence of bad faith or, at a minimum, the sort of "extremely poor judgment" which shows "fault" under Rule 37(b)(2). The Court specifically explained to Stewart in open court on January 28 and in its January 29 order that this argument did *not* justify his refusal to appear for his deposition. (Dckt. #178 at 6-7, 9-

14

10; Dckt. #159 at 2). Finally, there is no evidence that any factor outside of Stewart's control rendered him unable to sit for his deposition during the 21 day period specified by the Court.

The Court further finds that the appropriate sanction for the violation of Rule 37(b)(2)(A)(v) is to dismiss this case with prejudice. *See, e.g., De Falco,* 25 Fed. Appx. at 457 (affirming dismissal of *pro se* plaintiff's case with prejudice where plaintiff's "refusal to attend his deposition flouted the district court's order"); *Jennings v. Principi,* 114 Fed. Appx. 224, 226-27 (7th Cir. 2004) (affirming dismissal of plaintiff case with prejudice where plaintiff, *inter alia,* failed to appear at her own deposition)[6]. Stewart had three opportunities to sit for his deposition but he refused to do so on each occasion. As explained in detail in Section I, the Court repeatedly warned Stewart in clear terms that he faced severe consequences including the dismissal of his case if he disregarded the Court's order to appear for his deposition. These warnings were more than sufficient to "convey, directly and clearly, the potentiality of dismissal" to Stewart. *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 859 (7th Cir. 1998). Despite this, Stewart deliberately defied the Court's orders.

The fact that Stewart is proceeding *pro se* does not exempt him from understanding the Court's orders or complying with them. *See McInnis v. Duncan*, 697 F.3d 661, 665 (7th Cir. 2012) (citing cases); *De Falco,* 25 Fed. Appx. at 457. The Court has accommodated Stewart's

---

[6] The Court finds that dismissal of this lawsuit is a sufficient sanction and it declines to recommend that Stewart be required to pay defendants' fees and expenses associated with bringing this motion or any fees associated with the expenses they incurred when Stewart notified defendants that he would not appear for his deposition on December 3. Defendants have failed to provide any statement as to the fees and costs that they are seeking so that the Court can assess whether they are reasonable and are in fact the product of Stewart's failure to appear at his deposition. *See Alek v. Univ. of Chicago Hosps.,* No. 99 C 7421, 2001 WL 1543518, at *1 (N.D.Ill. Nov. 30, 2001). The Court notes, in any event, that the compensable fees and costs would likely be minimal. Defendants' motion and reply brief, while producing success, are quite concise with a combined total of 5 pages of substantive text and one case citation. Moreover, the only likely expense from Stewart's failure to appear for his deposition on December 3, 2019 would be the court reporter's appearance fee.

*pro se* status during the course of this litigation, including accepting his decision not to appear for the August 27, 2019 deposition because he was looking for an attorney. "But being a pro se litigant does not give a party unbridled license to disregard clearly communicated court orders. It does not give the pro se litigant the discretion to choose which of the court's rules and orders it will follow, and which it will wilfully disregard." *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996); *Jennings,* 114 Fed.Appx. at 226; *De Falco,* 25 Fed.Appx. at 457.

## CONCLUSION

For these reasons stated above, the Court RECOMMENDS that the motion for sanctions (Dckt. #162) be GRANTED in part and that Stewart's case against all defendants be dismissed with prejudice. The Court further RECOMMENDS that dismissal should be found to be a sufficient sanction and that Stewart should not be required to pay defendants' fees and expenses associated with bringing this motion or any fees asserted in their earlier motion for sanctions.

Stewart is advised that written objections to any finding of fact, conclusions of law, or the recommendation for the disposition of this matter must be filed with the Hon. John F. Kness without fourteen (14) days after service of this Report and Recommendation. Fed.R.Civ.P. 72(b). Failure to object will constitute a waiver of objections on appeal.

ENTER:

**Hon. Jeffrey Cummings
United States Magistrate Judge**

**Dated: June 5, 2020**